IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03770-NYW

THERESA TORRES,

    Plaintiff,

v.

DUSTIN FISHER, in his individual capacity, and
JARED HARTY, in his individual capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendants' Motion to Dismiss [Doc. 23, filed July 19, 2021]. The undersigned considers the Motion to Dismiss pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated July 19, 2021, [Doc. 26]. *See also* [Doc. 17; Doc. 25]. Having reviewed the Motion to Dismiss (or, the "Motion"), the case file, and the applicable law, Defendants' Motion to Dismiss is **GRANTED**.

## FACTUAL BACKGROUND

    The following facts are drawn from the operative Amended Complaint [Doc. 8] and the court presumes they are true for the purposes of the instant Motion to Dismiss. Plaintiff Theresa Torres ("Plaintiff" or "Ms. Torres") alleges that on December 25, 2018, two Logan County sheriff's deputies, Defendants Jared Harty ("Defendant Harty") and Dustin Fisher ("Defendant Fisher" and collectively, "Defendants"), came to her home at the request of her ex-boyfriend to obtain some of her ex-boyfriend's personal property that Plaintiff had allegedly refused to return. [Doc. 8 at 6–7]. Due to unrelated incidents that occurred in 2012, Ms. Torres had an anxiety attack

when she saw the law enforcement vehicles arrive. [*Id*. at 6]. Plaintiff told the officers that she did not have the items her ex-boyfriend was demanding, [*id*. at 7], and that "if he's [her ex-boyfriend] gonna be a d***, then I'm gonna be a b****," [*id*. at 6]. Plaintiff ultimately informed Defendant Harty that she possessed the items that her ex-boyfriend was demanding. *See* [*id*. at 7 ("I tried to back away and said let me go get the items and to just let me resolve the issue …")]; *see also* [*id*. at 9]. Plaintiff alleges Defendant Harty then became "verbal," stating "'oh now you got them,'" which escalated Plaintiff's fears. [*Id.* at 7). Defendant Harty then grabbed her arm, "spun [her] around," placed her in handcuffs, and stated "'you shouldn't have lied to me,'" [*id*. at 7], or "'Your [sic] under arrest,'" [*id*. at 9]. Defendants placed Plaintiff in the back cab of the truck facing a shotgun, which Plaintiff alleges triggered a severe panic attack and caused her throat to close so she couldn't breathe. [*Id.* at 7–8]. After "torturing" her for a period, Defendants released Plaintiff back to her home. [*Id*. at 9]. Ms. Torres alleges that she was "tortur[ed]" and repeatedly denied access to her medically prescribed service dog during the incident, which left her traumatized. [*Id.*]. She further alleges that the trauma she suffered that day caused her to give birth to a stillborn son. [*Id.*].

## PROCEDURAL BACKGROUND

Believing her rights were violated, Ms. Torres initiated this action *pro se* on December 18, 2020. *See* [Doc. 1]. The Honorable Gordon P. Gallagher subsequently granted Plaintiff leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 and issued an Order Directing Plaintiff to File an Amended Complaint. [Doc. 4]; *see also* [Doc. 2]. Shortly thereafter, Ms. Torres sought the appointment of pro bono counsel, *see* [Doc. 5], which Judge Gallagher denied as premature, *see* [Doc. 6].

On April 2, 2021, Ms. Torres filed the Amended Complaint, [Doc. 8], which remains the operative pleading in this case.  Therein, Ms. Torres claims Defendants violated (1) her rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by refusing her repeated requests for her service dog at the time of her arrest; (2) her First Amendment right to free speech by retaliating against her in response to her use of foul language at the beginning of the police encounter; and (3) her Fourteenth Amendment rights by torturing and bullying her into having a severe panic attack.  *See* [Doc. 8 at 4–9].  Pursuant to the April 16, 2021 Recommendation of United States Magistrate Judge, [Doc. 11], and the Honorable Lewis T. Babcock's Order Drawing Case accepting and adopting the same, [Doc. 12], the only claims that remain are Plaintiff's ADA and RA claims (Claim One and Claim Two, respectively), and her 42 U.S.C. § 1983 claims against Defendants Harty and Fisher in their individual capacities based on violations of the First and Fourteenth Amendment (Claim Three and Claim Four).  *See* [Doc. 12 at 2]; *see also* [Doc. 8 at 8–9].

On May 7, 2021, this action was assigned to the undersigned. *See* [*id.*].  Upon the unanimous consent of the Parties, this action was referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c).  [Doc. 17; Doc. 25; Doc. 26].  On July 19, 2021, Defendants filed the instant Motion to Dismiss [Doc. 23], invoking qualified immunity and seeking to dismiss the Amended Complaint for failure to state a claim; and a Motion to Stay [Doc. 24], seeking a stay of all discovery and proceedings pending resolution of their Motion to Dismiss.  That same day, this court issued a Minute Order directing Ms. Torres to file her responses, if any, to the Motion to Stay and Motion to Dismiss on or before August 10, 2021.  *See* [Doc. 27].  This court also directed the Clerk of the Court to mail a copy of the July 19, 2021 Minute Order to Ms. Torres at her address

of record. [*Id.*]. Plaintiff did not respond to the Motion to Stay, and the court subsequently granted the same, thus staying discovery pending resolution of the Motion to Dismiss. *See* [Doc. 32].

On August 10 and 11, Plaintiff filed Motions for Appointment of Counsel, *see* [Doc. 28; Doc. 29], which the court subsequently denied as moot and premature, respectively, *see* [Doc. 30]. On August 16, the court held a status conference, where Ms. Torres notified the court of an update to her mailing address, and the court ordered Ms. Torres to respond to the Motion to Dismiss by September 7, 2021. *See* [Doc. 32]. On September 9, 2021, Ms. Torres filed her Response to the Motion to Dismiss.[1] Thus, the Motion to Dismiss is ripe for determination.

## LEGAL STANDARDS

### I. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, and a "formulaic recitation of the elements of a cause of action

---

[1] Plaintiff did not seek leave of court to file a late Response. Under D.C.COLO.LCivR 7.1, "[a] motion shall not be included in a response" and "shall be filed as a separate document." In the Response, Plaintiff requests that the court accept the late filing because she was previously unable to determine how to file her Response properly. [Doc. 34]. Although Plaintiff asks the court to "go back and see [she] did try to file" the Response on time, Plaintiff does not explain *where* the court should look for this information. While Plaintiff's pro se status does not exempt her from complying with the procedural rules that govern all civil actions filed in this District, namely, the Federal Rules of Civil Procedure and the Local Rules of Practice for the District of Colorado, *see Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008), this court notes that Plaintiff filed her response only two days after her deadline to do so, and Defendants have not raised any objections to the untimely filing. Accordingly, the court will consider Plaintiff's Response here.

4

will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Okla. rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible"). The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## II. Qualified Immunity

The doctrine of qualified immunity protects government officials from individual liability in the course of performing their duties so long as their conduct does not violate clearly established constitutional or statutory rights. *Washington v. Unified Gov't of Wyandotte Cty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). Once a defendant has asserted a defense of qualified immunity, the burden shifts to the plaintiff who must establish that (1) the defendant violated a constitutional right, and (2) the right was clearly established. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). It is within the sound discretion of a court to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins*, 519 F.3d at 1249). "But if the right[s] were not clearly established," a court "may find qualified immunity without deciding the constitutionality

5

of the conduct." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (citing *Pearson*, 555 U.S. at 236–42).

A constitutional right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Washington*, 847 F.3d at 1197 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted)). "This precedent cannot define the right at a high level of generality." *Apodaca*, 864 F.3d at 1076 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "Rather, the precedent must be particularized to the facts." *Id.* (citing *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam)). And although there does not need to be a "prior case[ ] with precisely the same facts," *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 511 (10th Cir. 2011) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)), the court's "inquiry … must be undertaken in light of the specific context of the case, not as a broad general proposition," *id.* (quoting *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)).

### III.  Pro Se Parties

In applying these legal principles, this court is mindful that Ms. Torres proceeds pro se and is entitled to a liberal construction of her papers. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019). But the court cannot and does not act as an advocate for a pro se party. *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019). Nor does Ms. Torres's pro se status exempt her from complying with the procedural rules that govern all civil actions filed in this District, namely, the Federal Rules of Civil Procedure and the Local Rules of Practice for the District of Colorado. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

## ANALYSIS

Defendants seek to dismiss Plaintiff's claims on three bases. First, Defendants argue that Plaintiff's ADA and RA claims (Claim One and Claim Two) should be dismissed as a matter of law because those statutes do not provide for individual liability and, in the alternative, Plaintiff has failed to state a claim under those statutes. *See* [Doc. 23 at 6]. Second, Defendants argue that all of Plaintiff's claims are barred by the statute of limitations. [*Id*. at 7–9]. Third, Defendants assert they are entitled to qualified immunity on Plaintiff's Section 1983 claims based on violations of the First and Fourteenth Amendments (Claim Three and Claim Four). [*Id*. at 10–14]. The court will first address Defendants' statute of limitations argument and then address Plaintiff's ADA and RA claims before turning to Plaintiff's First and Fourteenth Amendment claims.

I.   **Statute of Limitations**

"Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished." *Torrez v. Eley*, 378 Fed. App'x. 770, 772 (10th Cir. 2010) (unpublished) (internal citation omitted). Rule 15(c)(1)(C) governs relation back of an amended complaint that "changes the party or the naming of the party against whom a claim is asserted." Fed. R. Civ. P. 15(c)(1)(C). Thus, with the addition of parties, Rule 15(c)(1)(C) governs relation back to the original complaint because the list of parties has "changed." *See Garrett v. Fleming,* 362 F.3d 692, 696 (10th Cir. 2004) (holding that [the predecessor to Rule 15(c)(1)(C)] governed relation back because the plaintiff's amendment "amounted to adding a new party" (citations omitted)); *see also Bell v. City of Topeka, Kansas,* 279 Fed. App'x. 689, 692 (10th Cir. 2008) (applying Rule 15(c)(1)(C) when a plaintiff adds a new party). Accordingly, Rule 15(c)(1)(C) applies to the addition of new parties after the statute of limitations has run on new claims. *See VKK Corp. v. Nat'l Football League,* 244 F.3d 114, 128 (2d Cir. 2001) ("[i]f a complaint is

7

amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time barred if it 'relates back' to a timely filed complaint."). "[Rule 15(c)(1)] mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion."  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 553 (2010).

Here, the applicable statute of limitations for each of Plaintiff's claims is two years.  *See Hamer v. City of Trinidad*, 441 F. Supp. 3d 1155, 1174 (D. Colo. 2020) (stating Colorado's two-year statute of limitations applies to a plaintiff's ADA and RA claims); *Laratta v. Raemisch*, No. 12-cv-02079-MSK-KMT, 2014 WL 1237880, at *14 (D. Colo. Mar. 26, 2014) ("The applicable statute of limitations on claims under 42 U.S.C. § 1983 is determined by state law, and Colorado's residual two-year limitations period applies to this case.").

Defendants do not dispute that Plaintiff's original complaint, filed on December 18, 2020, was filed within the applicable limitations period.  Rather, they argue that all of Plaintiff's claims are barred by a two-year statute of limitations on the basis that the "Amended Complaint does not relate back to the filing date of the original [c]omplaint" because the original complaint "was brought against Defendants Fisher and Harty in their official capacities only" while the Amended Complaint "changes parties" by naming Defendants in their individual capacities.  [Doc. 23 at 8]. Defendants contend that "neither Defendant Fisher nor Defendant Harty had any reason to know they might face liability individually until the Amended Complaint was filed on April 2, 2021, some three months after the applicable statute(s) of limitation had expired and after the 90 day period set forth in Rule 4(m) for service and summons of the original complaint had expired." [*Id.* at 9].  Plaintiff does not address these arguments in her Response.  *See* [Doc. 34].

8

As an initial matter, the amendment to a complaint must address the same facts set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(C). There is no dispute that this requirement is satisfied here. Therefore, the court must next determine whether "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, <u>but for a mistake concerning the proper party's identity</u>." Fed. R. Civ. P. 15(c)(1)(C) (emphasis added). There is no indication in the record that, within 90 days after the Amended Complaint was filed, Defendants Fisher and Harty received actual notice of this action, but Defendants have not argued they will be prejudiced by defending on the merits. Fed. R. Civ. P. 15(c)(1)(C)(i). The court finds that Defendants had constructive notice.

Defendants argue that Plaintiff's original Complaint asserted claims against Defendants Fisher and Harty in their official capacities only and that neither Defendant "had any reason to know they might face liability individually until the Amended Complaint was filed on April 2, 2021," three months after the applicable two-year limitations period had expired. [Doc. 23 at 9].[2] However, because Plaintiff is and has been proceeding *pro se* throughout this action, the court must construe those complaints liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). In *Krupski*, the Supreme Court interpreted mistake to include cases in which a plaintiff knows of a party's existence but misunderstands the role a party played in the incident giving rise to her claim. *See Krupski,* 560 U.S. 538 at 548–49. In this case, it appears that Plaintiff misunderstood that removing her official capacity claims against Defendants Fisher and Harty might impact her ability

---

[2] For instance, the Amended Complaint names certain defendants "In His Official and/or Supervisory Capacity," and names Defendant Fisher "In His Supervisory and/or Individual Capacity." [Doc. 8 at 1].

to bring suit against those same individuals in their individual capacities, despite the similarity of the factual bases for the claims.[3]  Thus, the court finds that Plaintiff's misunderstanding constitutes a "mistake" under Rule 15(c)(1)(C)(ii).  *See Laratta*, 2014 WL 1237880, at *16 ("[I]t is clear that Plaintiff, while proceeding *pro se,* misunderstood that he had to name specific defendants in their official capacities in order to obtain declaratory and injunctive relief. The court finds that Plaintiff's misunderstanding constitutes a 'mistake' under Rule 15(c)(1)(C)(ii).").  And although Plaintiff's claims against Defendants Fisher and Harty might otherwise be barred by the statute of limitations, under Rules 15(c)(1)(B) and (C), the court finds that her claims in the Amended Complaint relate back to the date of original filing and declines to dismiss the Amended Complaint.

## II.     Plaintiff's ADA and Rehabilitation Act Claims (Claim One and Claim Two)

Defendants argue that Plaintiff's claims under the ADA and RA should be dismissed for two reasons.  [Doc. 23 at 5].  First, Defendants assert that the claims should be dismissed because individual-capacity claims are not cognizable under the Title II of the ADA or the RA.  [*Id.* at 6].  Second, Defendants argue that Plaintiff fails to allege that Defendants intentionally discriminated against her based on her alleged disabilities.  [*Id.* at 6–7].  Plaintiff does not respond to either argument in her Response.  *See* [Doc. 34].  I address Defendants' arguments below.

***ADA and RA Claims Against Defendants in Their Individual Capacities***.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of

---

[3] Moreover, Judge Gallagher's Order directing Plaintiff to file an amended complaint, [Doc. 4], did not explain whether Plaintiff could raise her ADA and RA claims against Defendants Harty and Fisher in their individual capacities.  Rather, that Order addressed only whether Plaintiff could assert her constitutional claims against Defendants in their individual capacities.  *See* [Doc. 4 at 5 ("If Ms. Torres chooses to sue the Defendants in their individual capacities, she must allege facts in the amended Complaint to show that each named Defendant was personally involved in a deprivation of her constitutional rights.").

a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the RA states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "As a general matter, courts have construed the [RA] and the ADA similarly." *Montez v. Romer*, 32 F. Supp. 2d 1235, 1239 (D. Colo. 1999).

However, "[n]othing in the language of the [RA] and the [ADA] sections above explicitly authorizes or prohibits suits against individuals acting in their individual capacities." *Id.* at 1240. While the Tenth Circuit has not addressed whether a claimant may bring individual-capacity claims under the RA or Title II of the ADA, courts in this District have prohibited such claims. *See, e.g., Kilman v. Brown*, No. 19-cv-01419-RBJ-MEH, 2020 WL 219829, at *2 (D. Colo. Jan. 15, 2020), *report and recommendation adopted*, 2020 WL 1061000 (D. Colo. Mar. 5, 2020), *aff'd*, 833 F. App'x 474 (10th Cir. 2021) (unpublished) ("[T]he ADA does not provide for individual liability."); *Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist. 60*, 819 F. Supp. 2d 1179, 1191 (D. Colo. 2011), *aff'd sub nom. Ebonie S. v. Pueblo Sch. Dist. 60*, 695 F.3d 1051 (10th Cir. 2012) ("[I]ndividual defendants in their individual capacities are not properly subject to suit under the Rehabilitation Act or the ADA." (quotation omitted)). Moreover, other Circuit courts have also held that individual-capacity claims are not cognizable under Title II of the ADA or the RA. *See, e.g., Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials"); *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court was also correct to dismiss [the defendants] in their individual capacity for the discrimination and retaliation claims arising directly under the Rehabilitation Act

11

and the ADA."); *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (unpublished) ("[T]here is no individual capacity liability under Title II of the ADA."). Based on this precedent, the court agrees with Defendants that Ms. Torres's individual-capacity claims are not cognizable under the RA or Title II of the ADA. For this reason, Plaintiff's claims under the ADA and RA (Claim One and Claim Two) against Defendants in their individual capacities are **DISMISSED with prejudice**.[4]

## II. Plaintiff's Section 1983 Claims

Defendants argue they are entitled to qualified immunity on Plaintiff's First and Fourteenth Amendment claims because Plaintiff's allegations fail to show that Defendants violated a clearly established constitutional right under 42 U.S.C. § 1983. As discussed above, the burden lies with Plaintiff to demonstrate the official violated a constitutional right and that the right was clearly established at the time of the challenged conduct. *See A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th

---

[4] In reviewing the Amended Complaint, Judge Gallagher recommended, and Judge Babcock ordered, that Plaintiff's "§ 1983 claims asserted against Defendants Harty and Fisher in their individual capacities and the ADA/Rehabilitation Act claim be DRAWN to a presiding judge pursuant to D.C.COLO.LCivR. 40.1(a)." [Doc. 11 at 8; Doc. 12 at 2]. In contrast with other defendants who are expressly named in their official capacities, *see* [Doc. 8 at 1 (*e.g.* "Brett Powell in his official and/or supervisory capacity")], Plaintiff only names Defendants Harty and Fisher in their individual and individual and supervisory capacities, respectively, [*id.*]. Based on the foregoing, the undersigned does not interpret the Amended Complaint to contain a claim against either Defendant Harty or Defendant Fisher in his official capacity and, on August 13, 2021, directed the Clerk of Court to amend the case caption in this matter "to properly reflect that Defendants are sued in their individual—and not official—capacities." *See* [Doc. 30 at 1 n.1 (citing [Doc. 11; Doc. 12])]. However, even if the court were to consider Claims One and Two to lie against Defendants in their official capacities, Ms. Torres has still failed to state a claim as there are insufficient allegations for a factfinder to conclude that Defendants knew of her PTSD and/or anxiety or intentionally discriminated against her because of such. *Robertson v. Las Animas Cty. Sheriff's Dep't,* 500 F.3d 1185, 1196 (10th Cir. 2007) ("A public entity cannot know that a modification to its services under the ADA is necessary if it does not first understand that an individual requires such modification *because* he is disabled." (emphasis in original)).

Cir. 2016). If the plaintiff fails to establish either prong, then the defendant prevails on the defense. *Id.* The court will address Ms. Torres's First and Fourteenth Amendment Claims in turn.

### A. Plaintiff's First Amendment Claim (Claim Three)

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore,* 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (citations omitted). To state a Section 1983 claim for unconstitutional retaliation in violation of the First Amendment, a plaintiff must allege facts to demonstrate that (1) she was engaged in constitutionally protected activity; (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's constitutionally protected activity. *See Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

In the Complaint, Plaintiff alleges that her First Amendment retaliation claim is based on her use of "foul language" with Defendants when, referring to her ex-boyfriend, Plaintiff stated, "If he's(ex-boyfriend) gonna be a D*** then I'm gonna be a B***." [Doc. 8 at 9]. Plaintiff alleges that, after she made this comment, Defendant Harty began to "deepen his voice," which Plaintiff considered a "scare tactic" against her, acting "cocky in a threatening kind of way," and ultimately placing her under arrest. [*Id.*]; *see also* [*id*. at 6–7 ("I was then bullied, tortured and placed under complete fear and intimidated badly plus had my freedom of speech taken from me by the 2 said officers involved. Jared Harty then began to get very verbal with me after I said to my ex boyfriend through the deputy Jared Harty and Deputy Dustin Fisher "If he's(ex boyfriend) gonna be a D*** then im gonna be a B****! which at that time you can then beginto [sic] hear Deputy Jared Harty begin to deepen his voice and get verbal with me which only placed even more fear in me causing

13

my anxiety to intensify little by little. Well cause Deputy Jared Harty wasnt hearing the answers he wanted to hear from me he got upset and grabbed my arm and bruised my already easy to bruise body … and went to put the hand cuffs on me …")].

Defendants argue that it is "doubtful" that Plaintiff's speech at issue in her First Amendment claim is constitutionally protected because they could be considered "fighting words." [Doc. 23 at 10]. Defendants also argue that, even if Plaintiff's speech were protected, the Complaint still fails to allege facts demonstrating the latter two *Worrell* factors necessary to state a First Amendment retaliation claim—namely, that Defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and Defendants' adverse action was substantially motivated as a response to the Plaintiff's constitutionally protected activity. [*Id*. at 10–11]. Plaintiff's Response does not address any of Defendants' arguments. *See* [Doc. 34].

The court finds that the first *Worrell* factor is dispositive. Indeed, Plaintiff fails to explain how her "foul language" was constitutionally protected activity. This issue alone is fatal to Plaintiff's First Amendment claim as the burden lies with Plaintiff to first demonstrate that Defendants violated a constitutional right before the court can turn to whether that right was clearly established at the time of the challenged conduct. *See Holmes*, 830 F.3d at 1134; *Apodaca*, 864 F.3d at 1076 ("But if the right[s] were not clearly established, we may find qualified immunity without deciding the constitutionality of the conduct."). Defendants are therefore entitled to qualified immunity on Plaintiff's First Amendment claim. For the foregoing reasons, Plaintiff's First Amendment claim (Claim Three) is **DISMISSED without prejudice**.

### B. Plaintiff's Fourteenth Amendment Claim (Claim Four)

Plaintiff's Fourteenth Amendment claim is based on Defendants' alleged use of excessive force when handcuffing Plaintiff.  *See* [Doc. 8 at 9].  Ms. Torres alleges that when she was arrested, Defendant Harty grabbed her arm, turned her around, and placed her in handcuffs.  *See* [Doc. 8 at 9].  She also alleges that Defendant Harty's actions left bruises on her "already easy to bruise body."  [*Id.*].

Because Ms. Torres alleges the use of excessive force during a seizure, her claim is properly analyzed under the Fourth Amendment's objective reasonableness standard.  *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (citing *Graham v. Connor,* 490 U.S. 386, 395 (1989)).  This standard "requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest" (the "*Graham* test").  *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham*, 490 U.S. at 396).  The Tenth Circuit has acknowledged that the *Graham* test "asks if the officers' actions were 'objectively reasonable,' and recognizes that officers need to make 'split-second judgments.'"  *Donahue v. Wihongi*, 948 F.3d 1177, 1197 (10th Cir. 2020) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1125, 1138 (10th Cir. 2007)).  "[A] small amount of force, like grabbing [a suspect] and placing him in the patrol car, is permissible in effectuating an arrest under the Fourth Amendment."  *Cortez*, 478 F.3d at 1128.  Additionally, an excessive force claim that includes a challenge to the "[m]anner or course of handcuffing" requires the plaintiff to show both that "the force used was more than reasonably necessary" and "some non-de minimis actual injury."  *Donahue v. Wihongi*, 948 F.3d 1177, 1197 (10th Cir. 2020) (citations and quotations omitted).

Defendants move to dismiss Plaintiff's excessive force claim under the Fourteenth Amendment on the basis that "Plaintiff's allegations do not demonstrate that her seizure was in any way unreasonable," and therefore she fails to show a violation of a constitutional right. [Doc. 23 at 12–13]. The court respectfully agrees.[5] Under *Graham*, the court does not find that Plaintiff's allegations in support of this claim—that Defendant Harty grabbed her arm, turned her around, and placed her in handcuffs, which left bruises on her "already easy to bruise body," *see* [Doc. 8 at 9]—establish that Defendant Harty's actions were objectively unreasonable and excessive. *Cf. Donahue*, 948 F.3d at 1197 (on summary judgment, finding the actions of the officers during the plaintiff's arrest—pulling up the plaintiff, pulling back the plaintiff's arms, and handcuffing him—"were 'objectively reasonable' and not excessive"); *Cortez*, 478 F.3d at 1129 (no "actual injury" showing where only record evidence was plaintiff's "affidavit that the handcuffs left red marks that were visible for days afterward"). Accordingly, I find that Defendants are entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim.[6] For

---

[5] Defendants also argue that Ms. Torres's allegations of excessive force are limited to Defendant Harty, and she has not sufficiently alleged personal participation of Defendant Fisher to state a constitutional violation against him. *See* [Doc. 23 at 12]. However, the court need not address this argument here given its finding that Plaintiff fails to state a Fourteenth Amendment excessive force claim against either of Defendants.

[6] Related to her excessive force claim, Plaintiff also alleges Defendants "refused to listen to all [her] medical concerns" and refused to provide her service dog which all led "to [her] lupus anticoagulant along with the lack of oxygen due to excessive force" that caused her "body to pass a blood clot to [her] son that wasn't caught in time causing him to suffer and starve to death inside [her] belly." [Doc. 8 at 9]. "[C]ourts have long recognized that the reasonableness of a seizure depends not just on why or when it is made, but also on how it is accomplished." *Fisher v. City of Las Cruces,* 584 F.3d 888, 894 (10th Cir. 2009) (citation omitted). As the Tenth Circuit recognized in *Cortez,* "[p]hysical contact is not required for an excessive force claim—patently unreasonable conduct is." *Cortez v. McCauley,* 478 F.3d at 1131; *see also Fisher,* 584 F.3d at 897 (stating that *Cortez* "acknowledged—and did not overrule—our prior conclusion that in excessive force cases 'proof of physical injury manifested by visible cuts, bruises, abrasions or scars, is not an essential element.'"). Instead, a plaintiff needs to prove some "actual" injury caused by the seizure "that is not de minimis, 'be it physical or emotional.'" *Id.* at 894 (citing *Cortez,* 478 F.3d at 1129 n.25). The court has already concluded that Plaintiff has not sufficiently alleged that the manner of her

the foregoing reasons, Plaintiff's Fourteenth Amendment claim (Claim Four) is **DISMISSED without prejudice**.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendants' Motion to Dismiss [Doc. 23] is **GRANTED**;

(2) Plaintiff's Americans with Disabilities Act claim (Claim One) and Rehabilitation Act claim (Claim Two) against Defendants Dustin Fisher and Jared Harty in their individual capacities are **DISMISSED with prejudice**;

(3) Plaintiff's First Amendment claim (Claim Three) and Fourteenth Amendment claim (Claim Four) are **DISMISSED without prejudice**;

(4) Should Ms. Torres believe herself in a position to plausibly plead facts which would cure the pleading deficiencies identified herein, she is **ORDERED** to move to amend her complaint within fourteen (14) days of the entry of this Order; and

(5) A copy of this Order, marked as legal mail, be sent to the following:

> Theresa Torres
> PO Box 128
> Merino, CO 80741
> 863-529-4899

DATED: December 21, 2021

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

---

arrest was objectively unreasonable and excessive. Thus, the court need not determine whether Plaintiff has, or whether she even could, state an excessive force claim based on a psychological injury related to one's requests for a service animal during an arrest. *See Cortez,* 478 F.3d at 1129 n.25 (stating that, to recover on an excessive force claim, a plaintiff must show "(1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional" (emphasis added)).